**PORTER COUNTY DEVELOPMENT CORPORATION, an Indiana Corporation, Appellant,**

v.

**CITIBANK (SOUTH DAKOTA), N.A., Appellee.**

No. 64A03–0511–CV–559.

Court of Appeals of Indiana.

Oct. 18, 2006.

---

Gordon A. Etzler, Gordon A. Etzler & Associates, Valparaiso, IN, Attorney for Appellant.

Edward W. Hearn, Johnson & Bell, LTD., Highland, IN, Attorney for Appellee.

## OPINION

FRIEDLANDER, Judge.

Porter County Development Corporation (PCDC) filed three complaints against Citibank (South Dakota), N.A. (Citibank) seeking reimbursement of funds paid to Citibank by PCDC's employee, G.C. Vincent. The three complaints were consolidated under cause number 64D02–0401–PL–209.[1] Citibank filed a summary judgment motion, which the trial court granted. PCDC appeals the entry of summary judgment.

We affirm.

Vincent had three personal credit card accounts held by Citibank and, pursuant to the agreements governing those accounts, Citibank periodically extended Vincent credit. Vincent was employed by PCDC and allegedly misappropriated PCDC's funds. Vincent deposited the misappropriated funds into his personal checking ac-

---

1. The two additional cause numbers were 64D02–0401–PL–210 and 64D01–0401–PL– 327.

count, and issued checks (the checks) drawn upon that personal account to pay part of the outstanding balance of the three Citibank-held credit card accounts. Citibank was unaware Vincent used misappropriated funds to pay his credit card balance.

PCDC filed three complaints against Citibank seeking reimbursement of the misappropriated funds. On September 13, 2004, Citibank filed its first motion for summary judgment, which the trial court denied. Thereafter, Citibank filed a second summary judgment motion on April 29, 2005, which the trial court granted. PCDC now appeals.

PCDC contends the trial court erred by granting Citibank's motion for summary judgment. Summary judgment is appropriate only where there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Matteson v. Citizens Ins. Co. of Am.*, 844 N.E.2d 188 (Ind. Ct.App.2006). All facts and reasonable inferences drawn therefrom are construed in favor of the nonmoving party. *Matteson v. Citizens Ins. Co. of Am.*, 844 N.E.2d 188. Our review of a grant or denial of a summary judgment motion is limited to those materials designated to the trial court. *Id.* We must review carefully a decision on summary judgment to ensure a party was not improperly denied its day in court. *Id.* In the absence of genuine issues of material fact, we will affirm summary judgment on any legal theory supported by the record. *Id.*

PCDC contends it may trace money Vincent misappropriated and used to pay a pre-existing debt even if Citibank had no knowledge the money was misappropriated. Citibank responds that because it "received negotiable instruments and qualifie[d] for Holder–In–Due–Course status, [it] [took] the instruments and proceeds free from any claims of PCDC." *Appellant's Brief* at 5–6. We first address Citibank's assertion regarding its status as a holder in due course.

■ Accepting as true Citibank's contention that it qualifies as a holder in due course, its status as such under these facts is inapposite. One's status as a holder in due course protects it from certain "personal defenses"[2] of the drawer of a draft,[3] including failure or lack of consideration, breach of warranty, unconscionability, and fraud in the inducement. Dale A. Whitman, *Reforming the Law: The Payment Rule as a Paradigm*, 1998 BYU L.Rev. 1169, 1169 n. 4 (1998). A "drawer" is "a person who signs or is identified in a draft as a person ordering payment." Ind.Code Ann. § 26–1–3.1–103(a)(3) (West, PREMISE through Public Laws approved and effective through March 15, 2006). In the instant case, PCDC's employee, Vincent, was the drawer. Citibank is not seeking protection from Vincent. Vincent directly issued Citibank a check drawn upon his personal account. The drawee bank honored Vincent's check, and nothing in the record suggests Vincent attempted to avoid payment or recoup the transferred funds. Rather, Citibank seeks protection from PCDC. PCDC did not seek reimbursement of the transferred funds based upon a defect or irregularity in the checks, nor was it even a "party" to the checks. *See* I.C. § 26–1–3.1–103(a)(8). The kind of protection afforded a holder in due course,

---

2. *See* I.C. § 26–1–3.1–305(a)(2), (3) (West, PREMISE through Public Laws approved and effective through March 15, 2006).

3. *See* I.C. § 26–1–3.1–104(f)(1) (West, PREMISE through Public Laws approved and effective through March 15, 2006) (a check is "a draft other than a documentary draft, payable on demand and drawn on a bank").

therefore, is of no utility to Citibank under these facts.[4]

In support of its contention that Citibank must return the transferred funds, PCDC relies upon *Porter v. Roseman,* 165 Ind. 255, 74 N.E. 1105 (1905), and *Peoples State Bank v. Kelly,* 78 Ind.App. 418, 136 N.E. 30 (1922). A brief review of these cases is warranted.

In *Porter v. Roseman,* the defendant owned a jewelry store. Mount, an employee of the defendant, owed the plaintiff $432. The plaintiff's agent, without the plaintiff's knowledge, contacted Mount, whom the plaintiff's agent knew had no ownership interest in the defendant's jewelry store, to collect the $432 Mount owed to the plaintiff. The plaintiff's agent assisted Mount in selling a diamond, and from that sale accepted $35 from Mount in partial satisfaction of Mount's debt owed to the plaintiff. Mount and the plaintiff's agent agreed that the balance of the proceeds from the sale would be payable to the plaintiff, rather than the defendant. Our Supreme Court determined that "Mount acquired no title by the conversion, and [ ] he transferred to [the plaintiff] no better title to the money than he himself possessed." *Porter v. Roseman,* 74 N.E. at 1106. The Supreme Court went on to conclude the defendant's "money, having reached the ... [plaintiff] without authority or right, remained as much his property in the hands of [the plaintiff] as it was in the hands of Mount[.] ... [The plaintiff's] innocence and good faith afford no protection against the rightful owner who has been tortiously dispossessed." *Id.* (citations omitted).

In *Peoples State Bank v. Kelly,* the plaintiff was the receiver of an automobile dealership. The dealership's employee, Zaring, sold the dealership's property and used the funds to pay his personal debt, which he owed to the defendant, *i.e.,* Peoples State Bank. The dealership sued the bank to recover the funds transferred to it by Zaring. The trial court concluded "the law is with the [dealership], and that he is entitled to recover on his complaint against [the bank]. . . ." *Peoples State Bank v. Kelly,* 136 N.E. at 31. On appeal, we specifically rejected the bank's argument that it was not required to pay the judgment because there was no evidence that it had notice of the dealership's employee's misappropriation. We concluded, therefore, the bank's lack of notice did not absolve it of its duty to repay funds acquired from a debtor who misappropriated the funds transferred.

■ *Porter v. Roseman* and *Peoples State Bank v. Kelly,* therefore, stand for the proposition that one who receives misappropriated money, or the proceeds of misappropriated property, is not entitled to retain that money despite receiving it in good faith and lacking notice of its misappropriation. This proposition is predicated on the theory that one who misappropriates money acquires no title to that money and, therefore, cannot pass good title to the misappropriated money to a subsequent transferee. *See Porter v. Roseman,* 165 Ind. 255, 74 N.E. 1105. There are several cases, however, that contradict *Porter* and *Kelly.*

In *Campbell v. Pence,* 118 Ind. 313, 20 N.E. 840 (1889), a case decided before either *Porter* or *Kelly,* the plaintiff, Pence, and Elijah Walden were partners in a grain-selling business. The plaintiff pro-

---

4. *See* Kurt Eggert, *Held Up In Due Course: Codification and the Victory of Form Over Intent In Negotiable Instrument Law,* 35 Creighton L.Rev. 363, 376 ("function of the holder in due course doctrine was to make negotiable instruments more easily transfer[ ]able by removing a great barrier to their transferability, the fear that the [drawer] of a [draft] will have a defense to it").

vided all of the capital for the business and deposited that money into a checking account. Walden had authority to draw upon the account for business purposes only, which the defendant, Campbell, knew. Despite Walden's lack of authority to do so and the defendant's knowledge of his lack of authority, Walden issued the defendant checks drawn upon the plaintiff's account in satisfaction of Walden's personal debt. Based upon these facts, the Supreme Court affirmed judgment in the plaintiff's favor, stating, "[a]ll the [plaintiff] was required to allege and prove was the wrongful and unlawful payment by Walden to [the defendant] out of [the plaintiff]'s individual money, *and that [the defendant] had knowledge that the money so paid was the money of the [plaintiff],* and was paid to him without authority." *Id.* at 841 (emphasis supplied).

Subsequent opinions have cast further doubt upon *Porter* and *Kelly.* *See Peoples State Bank v. Caterpillar Tractor Co.,* 213 Ind. 235, 12 N.E.2d 123, 125 (1938) ("Money [transmitted by check and deposited into a bank] may be pursued and recovered by the true owner, *unless* it has fallen into the hands of a bona fide purchaser for a valuable consideration [5] without notice") (emphasis and footnote supplied); *Chosnek v. Rolley,* 688 N.E.2d 202 (Ind.Ct.App. 1997) (summary judgment in favor of investors appropriate where they received payments with good faith belief that such was a legitimate return on their investments and they gave equivalent value for the principal investment returned); *cf. Shelby Eng'g Co., Inc. v. Action Steel Supply, Inc.,* 707 N.E.2d 1026 (Ind.Ct.App. 1999) (judgment in favor of plaintiff appropriate where defendant was not an innocent third party, defendant failed to give consideration, and the property sold was not done so in the due course of defen-

dant's business); *Clausen v. Warner,* 118 Ind.App. 340, 78 N.E.2d 551, 552 (1948) ("Since appellees received the money of appellant *with full knowledge* of all the facts and circumstances and knowing *that decedent was without right to give it to them,* it is elementary that they are liable for its return") (emphases supplied).

■ Additionally, in *Ohio Cas. Ins. Co. v. Smith, et al.,* 297 F.2d 265 (7th Cir. 1962), the U.S. Court of Appeals for the Seventh Circuit noted that *"Porter* … stands against the weight of authority in the United States and against a recognized public policy that money must be permitted to flow freely in our economy." *Id.* at 266. The Seventh Circuit further noted, "[t]he general rule is that one who receives money in good faith for valuable consideration prevails over the victim." *Id.* Such is still the general rule. *See, e.g., Toupin v. Laverdiere,* 729 A.2d 1286, 1288 (R.I. 1999) ("[o]ne who receives money in good conscience and has practiced no deceit or unfairness in obtaining it is under no legal obligation to return it to one from whom it has been obtained by deceit on the part of another"); *Transamerica Ins. Co. v. Long,* 318 F.Supp. 156, 160 (W.D.Pa.1970) ("after stolen money has been negotiated, the victim-owner … cannot recover a like amount from a third-party recipient unless it can be proved that the recipient had prior knowledge that the money was stolen"; "It is absolutely necessary for commerce … that one who receives money … is not put on inquiry as to the source [thereof]. … It is generally … impractical to discover the source of money, and for this reason one who receives money in good faith for valuable consideration prevails over the victim"); *James Talcott, Inc. v. Roy D. Warren Commercial, Inc.,* 120 Ga.App. 544, 171 S.E.2d 907, 909 (1969) ("[w]here there are two claimants for the

---

5. We note that the extension of credit constitutes consideration. *Braden Corp. v. Citizens*

*Nat'l Bank of Evansville,* 661 N.E.2d 838 (Ind.Ct.App.1996).

same money and one of them is recognized as being entitled to it by the person from whom it is due, and is paid, the other cannot sue him to recover the money"); *Plitt v. Greenberg,* 242 Md. 359, 219 A.2d 237, 241 (1966) ("if a transferee came into possession of a plaintiff's money in good faith after paying a good and valuable consideration for it, then the plaintiff could not prevail and recover back the funds in that transferee's possession").

In light of *Caterpillar Tractor, Chosnek, Shelby Engineering,* and *Clausen,* the great weight of authority in other jurisdictions, and the important policies regarding the transferability of money, we decline to apply *Porter* and *Kelly.* On the facts of this case, that is, where Citibank received money in good faith for valuable consideration and without notice or knowledge of Vincent's alleged misappropriation, the trial court did not err in granting Citibank's summary judgment motion.

Finally, PCDC contends a "constructive trust is imposed upon converted monies in favor of the rightful owner, and may be traced into the hands of a paid creditor who accepted payment in good-faith." *Appellant's Brief* at 6. A constructive trust may be imposed where a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if permitted to retain it. *Morfin v. Estate of Martinez,* 831 N.E.2d 791 (Ind.Ct.App.2005). "A duty to convey the property may arise if it was acquired through fraud, duress, undue influence or mistake, or through a breach of a fiduciary duty, or through the wrongful disposition of another's property." *Id.* at 801–02. The type of fraud necessary for the establishment of a constructive trust may be actual or constructive. *Morfin v. Estate of Martinez,* 831 N.E.2d 791.

A plaintiff alleging the existence of constructive fraud has the burden of proving the existence of a duty owing to it by the party to be charged due to their relationship, and the gaining of an advantage by the party to be charged with fraud. This duty may arise in one of two ways: (1) by virtue of the existence of a fiduciary relationship; or (2) in the case where there is a buyer and a seller, where one party may possess knowledge not possessed by the other and may thereby enjoy a position of superiority over the other. *Id.* In the instant case, none of the conditions giving rise to a constructive trust are present. PCDC concedes Citibank obtained the funds from Vincent in good faith and without knowledge of Vincent's misappropriation. Further, nothing in the record indicates the existence of a relationship between PCDC and Citibank, much less that of a fiduciary. We decline, therefore, to impose upon Citibank a constructive trust in favor of PCDC.

Judgment affirmed.

BARNES, J., and MATHIAS, J., concur.